The People of the State of Illinois ex rel. Eli Guggenheim, Appellee, v. City of Chicago and Herman F. Schuettler, Appellants.

### Gen. No. 23,378.

1. THEATERS AND SHOWS, § 4*—*how immorality of moving picture may not be shown.* The question whether or not a moving picture is immoral is not to be determined by expert testimony.

2. EVIDENCE, § 400*—*when expert testimony inadmissible.* Expert evidence is inadmissible to show what the average person is supposed to know.

3. THEATERS AND SHOWS, § 3*—*when exhibition of moving picture properly refused by censor.* If, in the exercise of sound discretion and with reasonable basis the censor deems a moving picture immoral, a refusal by him to permit its exhibition is proper.

4. THEATERS AND SHOWS, § 3*—*when not shown that moving picture immoral.* On a petition for mandamus to compel the issuance of a permit to exhibit a moving picture, evidence *held* sufficient to support a ruling of the censor that the picture was immoral.

5. THEATERS AND SHOWS, § 3*—*how censor may judge as to immorality of moving picture.* In determining whether or not a moving picture is immoral, the censor is not required to judge the picture as a whole rather than with regard to particular parts and scenes.

6. MANDAMUS, § 6*—*when writ may be obtained.* One seeking a writ of mandamus must show a clear right thereto.

7. THEATERS AND SHOWS, § 3*—*what is function of censor of moving pictures.* The function of the censor of moving pictures is not ministerial, but is *quasi* judicial in character, calling for the exercise of sound discretion, with which the courts will not interfere except in a clear case.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Reversed. Opinion filed March 12, 1918.

SAMUEL A. ETTELSON, for appellants; CHESTER E. CLEVELAND and FRANK D. AYERS, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

JAMES J. BARBOUR and EDWARD H. S. MARTIN, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

The petition filed herein sought a mandamus to compel respondent, the General Superintendent of Police of the City of Chicago, to grant a permit to 'exhibit a certain moving picture entitled ''Sins of the Sons.'' Issue was taken on the facts whether the picture was ''immoral'' within the meaning of 'the city ordinances regulating the exhibition of such pictures, and impliedly whether respondent abused the power vested in him of refusing a permit.

The trial was without a jury. The evidence consisted of a view of the picture as presented on a screen, and the testimony of witnesses describing some of its phases and expressing their individual opinions as to whether it was immoral. These opinions were conflicting. At the close of the evidence the court found for petitioner, and the controlling questions argued relate to the sufficiency of the evidence to sustain the judgment.

The films were received as exhibits in the case and have been projected on a screen for our inspection. We concur in the view that they constitute the best evidence, and that little, if anything, can be added by oral testimony to what they portray.

We do not, however, regard the question whether they are ''immoral'' as one to be determined by expert testimony. As said in *Block v. City of Chicago*, 239 Ill. 251, 264: ''The average person of healthy and wholesome mind knows well enough what the words 'immoral' and 'obscene' mean and can intelligently apply the test to any picture presented to him.'' Expert evidence is inadmissible to show what the average person is supposed to know. The censor was required, and the court also, in this case, to de-

termine from the picture itself whether it is immoral. If in the exercise of sound discretion the censor so deemed it, then unquestionably it was his right and duty to reject the application for a permit. The fact that the witnesses entertained different views as to the immoral character of the picture, or parts of it, indicates that there was room for a difference of opinion on the subject, and the mere fact that the court took one view does not justify the conclusion that the respondent abused his power in taking another. If there is a reasonable basis for the censor's opinion, then a refusal of the permit based thereon could not be deemed an abuse of power, and the picture unquestionably presents ground for such an opinion.

One of its scenes, much dwelt upon in the evidence, shows the introduction of an innocent boy into a house of prostitution and vividly portrays the triumph of its evil suggestions, a scene better calculated to appeal to the prurient and degenerate than to illuminate the moral purposes of the play, and one that may well be deemed harmful in influence when presented to mixed audiences. Appellee argues that none of its features is incompatible with such a scene in a reputable place. The scene required no label. It so fits into the story of the play that the ordinary observer would not mistake the place or its part in the story.

The court's rulings were to the effect that the picture must be judged as a whole and not as to any particular part or scene. If this were the proper test for decision then censorship would be of little avail. For with such limitation, no matter how laudable might be the underlying motive of the play, scenes could be introduced with impunity for other purposes than to point its moral or emphasize its lessons.

Petitioner did not show a clear right to the writ, as in such a case he was bound to do. (*People v. Busse*, 248 Ill. 11.) We do not agree with appellee's contention that the duty of determining whether a pic-

ture complies with the requirements of the ordinances before issuing a permit for its exhibition is a mere ministerial one.   The function of censorship is *quasi* judicial in character, calling for the exercise of sound discretion, with which the courts will not ordinarily interfere except in a clear case.   (Spelling on Inj. & Extra. Rem., vol. 2, sec. 1476; High on Extra. Legal Rem. (3rd Ed.), sec. 327; 26 Cyc. pp. 158-161; 19 Am. & Eng. Encyc. of Law, p. 821; *Block v. City of Chicago*, 239 Ill. 251; *People v. Webb*, 256 Ill. 364.)   The evidence does not show such abuse, and for that reason alone, regardless of any difference of views as to whether the picture is immoral, the judgment cannot stand.

We need not dwell on the point made that respondent did not pass on the picture in its present shape. The evidence indicates that changes were made after successive refusals of a permit and that the refusals were based mainly on the scene referred to, so that another inspection was unnecessary with knowledge of the fact that said scene had not been eliminated. Besides, the writ is not sought to compel respondent to inspect the picture but to grant a permit for its exhibition on the theory that it was improperly refused after inspection.

*Reversed.*