**Mary J. Schneider, et al., by David Schneider, Their Guardian, Plaintiffs-Appellees, v. Vernon Kirk, et al., Defendants-Appellants.**

**Gen. No. 66–118.**

Second District.

May 17, 1967.

171

Knight, Ingrassia & Schirger, of Rockford, for appellants.

Eaton and Leemon, of Mt. Carroll, for appellees.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is a dramshop action brought by David and Mary Schneider, husband and wife, and by David Schneider as guardian for their children, Keith and Kevin, for injuries suffered by all of said plaintiffs. The defendants were Vernon Kirk, the operator of a dramshop in Freeport, known as the Tropical Lounge, and Wesley, Augustus, Peter and Emma Stukenberg, the owners thereof. The defendants appealed to this court from a judgment

entered against them and in favor of the plaintiffs on verdicts returned by the jury in the total sum of $27,000.

The plaintiffs' injuries were suffered in an automobile accident which took place the evening of December 24, 1963, at approximately 10:30 p. m. David Schneider, accompanied by his wife and four sons, was driving home after a Christmas Eve gathering with his wife's parents. As he was traveling east on a two-lane highway, an automobile driven by Edward Toepfer crossed over into his lane of traffic and struck his car. As a result, David Schneider and his family all suffered severe injuries, and his youngest son, age ten months, was killed.

A deputy sheriff, a state trooper, and a witness to the accident, testified, on behalf of the plaintiffs, that Toepfer was intoxicated at the time, and their opinions were based upon his appearance, actions and the odor of alcohol on his breath. It was conceded that Toepfer had been drinking prior to the accident.

The defendants offered evidence that Toepfer was at the Tropical Lounge from approximately 5:00 until 6:00 p. m., and had one or two beers during this period of time; that the Lounge closed about 6:00 p. m.; that Toepfer and his female companion then went to her parent's house where they remained until about 8:30 or 9:00 p. m., during which time they had nothing further to drink; that they then left to go to Savanna for dinner and en route stopped for a drink; and that they were again driving toward Savanna when the accident occurred. The defendants' proof relative to the amount and time of the drinking came primarily from Toepfer, his female companion, and the defendant Kirk. In contradiction of the defendants' evidence, two witnesses, who testified on behalf of the plaintiffs, stated that Toepfer was still drinking in the Lounge at 8:00 p. m. on the night in question.

The defendants contend that the trial court committed prejudicial error in permitting plaintiffs' counsel to ask

174

certain questions during the voir dire examination of the jurors; in its evidentiary rulings; and in permitting plaintiffs' counsel to make certain improper and prejudicial statements in his closing argument.

During the voir dire examination, plantiffs' counsel asked each of the jurors whether they would have any disagreement with a law which provides, that when a person is injured by the act of another who is under the influence of intoxicating liquor, that the injured party may recover against the proprietor of the tavern who sold the liquor which caused the intoxication, in whole or in part. The defendants complain that the repetition of this question constituted error in that this statement did not advise the jurors that the intoxication must have been a cause or factor contributing to the injury.

We do not believe that the trial court committed error in this respect. This was a cause of action wherein the plaintiffs sought damages for injuries caused "by" an intoxicated person. In such case, even the defendants concede that the doctrine of proximate or effective causation has no relevancy. Hocker v. O'Klock, 16 Ill App2d 414, 418, 158 NE2d 7 (1958); Cope v. Gepford, 326 Ill App 171, 181, 182, 61 NE2d 394 (1945).

In a "by" cause of action, the plaintiff is only required to prove that the injuries resulted from the direct affirmative act of an intoxicated person. If an intoxicated person were operating an elevator, which fell solely by reason of a faulty cable mechanism, any attendant injuries to passengers would not result from the act of an intoxicated person and there would be no causal relation between the intoxication and the injury. In such case, no liability would arise under the Dram Shop Act. If, however, there is a direct causal relation between the act committed by an intoxicated person and the injury to another, the injury is caused "by" the intoxicated person. Hernandez v. Diaz, 31 Ill2d 393, 399, 202 NE2d 9 (1964).

175

In Diaz, the plaintiff was shot by a guard, who was employed by the tavern, while the guard was scuffling with and trying to remove several intoxicated persons from the premises. The Supreme Court, in holding that such facts established a "by" cause of action under the Dram Shop Act, stated that the direct affirmative act of the intoxicated person need not be performed on or done to the person injured. All that need be shown in a "by" cause of action is that the affirmative act of the intoxicated person had a causal connection with the injuries sustained by the plaintiff; and a chain of causal connection between the intoxication and the injury is all that is required. Hernandez v. Diaz, ibid., 398, 399.

 The statements made by plaintiffs' counsel during the voir dire examination were not misleading in this regard. He asked the prospective jurors if they had any quarrel with a law which provided that one "who is injured *by the act*" of an intoxicated person may recover. Furthermore, there was no issue in the case on the question of whether it was Toepfer's direct affirmative act which caused the injuries to the plaintiffs. There was no claim that a tire had failed or no assertion of any other mechanical insufficiency in the car itself, or that something other than the act of Toepfer led to the injuries. The issue presented to the jury was that of intoxication and whether the defendants caused it, in whole or in part.

 The defendants also suggest that plaintiffs' repetition of the dramshop question to each juror was error in that it constituted an examination, directly or indirectly, concerning matters of law contrary to the direction of Supreme Court Rule 24–1 (present Supreme Court Rule 234). This Rule was designed to limit or eliminate the extended voir dire examinations so prevalent before its adoption. However, it was not intended to prevent counsel from making pertinent inquiries to determine whether a juror might be prejudiced or biased,

176

or to preclude counsel from intelligently exercising his right of challenge for sufficient cause or peremptorily. The People v. Lobb, 17 Ill2d 287, 300, 161 NE2d 325 (1959).

██ It is highly conceivable, as indicated by the responses of certain of the prospective jurors in the case at bar, that many persons among any group of potential jurors may believe that a law permitting recovery against an operator or owner of a dramshop is not just. The Dram Shop Act (Ill Rev Stats 1965, c 43, par 135) expresses a statutory philosophy which many laymen may find unacceptable. It was not a tort at common law either to give or sell liquor to an able-bodied person and, generally, negligence is not a factor in the application of this statutory remedy. However, a form of the doctrine of contributory negligence has been grafted onto the Dram Shop Act by Judicial construction under such terms as "complicity," "participation," or the concept of not being an "innocent suitor." Osinger v. Christian, 43 Ill App2d 480, 484, 485, 193 NE2d 872 (1963); Douglas v. Athens Market Corp., 320 Ill App 40, 50, 49 NE2d 834 (1943); Forsberg v. Around Town Club, Inc., 316 Ill App 661, 666, 45 NE2d 513 (1942).

Consequently, in such cases, a litigant may not be adequately protected by a statement from prospective jurors that they will follow the law as given to them by the court, unless the party is first certain that each juror is generally aware of what law governs the action. The importance of permitting sufficient inquiry to uncover bias or prejudice is particularly meaningful to litigants in dramshop acts.

██ The defendants also complain that the court erred in permitting the plaintiffs to introduce evidence concerning a criminal indictment against Toepfer without proving a conviction thereunder. The total evidence on this subject must be reviewed in considering this alleged error. The plaintiffs' counsel called deputy sheriff

177

Miller as a witness. A State Police Officer was the investigating officer at the scene of the accident and Miller arrived at the scene after the State Police Officer had completed most of his investigation. On direct examination, Miller stated that he smelled liquor on Toepfer's breath and believed that Toepfer was intoxicated. On cross-examination, defendants' counsel asked Miller if he charged Toepfer with driving while drunk, and Miller replied that he was not the investigating officer. From Miller's testimony it was obvious that he had not given Toepfer a ticket for drunken driving. The question asked by defense counsel was improper except for impeachment purposes or to show interest. Cavitt v. Faulkner, 74 Ill App2d 196, 219 NE2d 363 (1966); Jacobson v. National Dairy Products Corp., 32 Ill App 2d 37, 42, 176 NE2d 551 (1961). Plaintiffs' counsel offered a mild protest to this improper question in these words, "If the Court please, if we want to get into the charges on Edward Toepfer, fine, we can get into it."

██ On redirect examination by the plaintiffs and over the defendants' objections, deputy Miller testified that Toepfer was indicted as a result of this accident. The court erred in admitting this testimony. During re-cross-examination, the defendants elicited the statement from Miller that Toepfer was indicted for reckless homicide. The court likewise erred in admitting this testimony. We do not agree with the plaintiffs' contention that the door to all of this testimony was opened by the defendants when their counsel asked the deputy on cross-examination whether he gave Toepfer a ticket for being intoxicated. Under the circumstances of this case, the entire line of questioning was erroneous. However, the question of whether this constituted reversible error must be considered along with the other errors charged in this appeal. Both the plaintiffs and the defendants contributed to the improprieties in question.

178

■ ■ Defendants also complain that plaintiffs' counsel made improper comments in his closing argument. However, defendants' counsel in his argument stated that if plaintiffs had a cause of action, it was against Toepfer; and that it was he—not the defendants—who should be brought into the court in the action to answer to the plaintiffs in damages. When making his argument, defense counsel was aware that Toepfer was not in the court because his insurance carrier had paid $17,500 for a covenant not to sue. Under such circumstances, his comments were improper and prejudicial. Consequently, he cannot now complain of plaintiffs' otherwise improper retort in rebuttal: that it was unimportant why Toepfer was not a defendant—"we're trying to recover for injuries where we can get some money." Walsh v. Chicago Rys. Co., 303 Ill 339, 351, 135 NE 709 (1922).

■ The defendants also urge that the trial court erred in excluding certain evidence. Defendants' proof indicated that Toepfer had nothing to drink before patronizing the Tropical Lounge; that he was there only from 5:00 to 6:00 p. m., during which time he had one or two beers; and that he did not drink again until approximately 9:00 or 9:30 p. m., after which he was involved in the accident. Defendants' theory was that, absent any drinking prior to the time Toepfer was in the Lounge, when considered in connection with the quantity of beer there consumed and his abstention from drink thereafter until 9:00 or 9:30 p. m., the liquor consumed at the Lounge could not have caused his intoxication, in whole or in part.

■ The trial court refused to admit the testimony of Dr. Tucker, a pathologist from the Freeport Memorial Hospital. His testimony, as indicated by the offer of proof, would have been that if a person of the physical structure of Toepfer had not been eating or drinking and

then had one or two beers about 5:00 p. m., and nothing further to drink until approximately 9:30 p. m., that the alcohol in the blood stream, from said beers, would have been completely oxidized and removed by 8:30 p. m. The refusal of the trial court to admit this testimony sufficiently prejudiced defendants to leave us no alternative other than to remand the action for a new trial.

Each party to a lawsuit is entitled to present relevant and material evidence in accordance with his theory of the case. The defendants made it clear that their theory was that Toepfer had not been drinking prior to the time he was served two beers at defendants' Lounge between 5:00 and 6:00 p. m.; that he abstained thereafter until approximately 9:30 p. m.; and, therefore, he could not have been intoxicated, in whole or in part, by what he consumed at the defendants' place of business.

A person may be held liable under the Dram Shop Act in a "by" type of action only if the intoxicating liquor served at his place of business contributed in some degree to the subsequent intoxication existing at the time of the act giving rise to the injuries. Osborn v. Leuffgen, 381 Ill 295, 298, 45 NE2d 622 (1943); Pellico v. Jackson, 70 Ill App2d 313, 328, 329, 217 NE2d 281 (1966); Baker v. Sauber, 62 Ill App2d 66, 71, 210 NE2d 223 (1965). The defendants had a right to present to the jury relevant and material evidence to sustain their theory of the case. Part of this evidence was admitted; the remainder was either excluded or presented in such an obscure manner, due to the court's rulings, as to be of no persuasive force or effect.

The testimony of the pathologist was vital to defendants' case. It cannot seriously be urged that the rate of oxidation and dissipation of alcohol from the blood is not subject to expert testimony. It is a matter outside of the knowledge of the average person, and was relevant and significant evidence on a material is-

180

sue in this case. Miller v. Pillsbury Co., 33 Ill2d 514, 516, 517, 211 NE2d 733 (1965); also see: Woolley v. Hafner's Wagon Wheel, Inc., 22 Ill2d 413, 419, 176 NE2d 757 (1961). The exclusion of this testimony constituted reversible error.

 Plaintiffs contend that under the case of Nystrom v. Bub, 36 Ill App2d 333, 184 NE2d 273 (1962), the testimony of Dr. Tucker was not admissible. In Nystrom, the evidence which was offered and refused, was substantially the same as that offered by the defendant in this case through Dr. Tucker. And, in Nystrom, we stated that the refusal to admit this evidence was not reversible error; and that expert testimony is admissible when the subject matter is of such a character that only persons of skill and experience are capable of forming a correct judgment as to any facts connected therewith. We further stated that intoxication could be proven by any witness who had sufficiently observed the behavior of the supposed intoxicant, and that any such witness could state his conclusion as to the fact of intoxication.

 We reaffirm the Nystrom rule with reference to when expert testimony is admissible, but we expressly overrule Nystrom in its application of the rule. We hold that Dr. Tucker's testimony was intended to go to the issue of whether the liquor served by the defendants could have contributed to Toepfer's intoxication; and that it was competent for this purpose. The question of whether the rate of oxidation and elimination of the alcohol from the blood stream was such that the drinks in question could not have contributed to Toepfer's subsequent intoxication, was a matter beyond the skill, knowledge or comprehension of the average person. "The trend is to admit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where diffi-

cult of comprehension and explanation. Miller v. Pillsbury Co., 33 Ill2d 514, 516, 517, 211 NE2d 733 (1965). It is still for the jury to accept or reject the opinion testimony." Mack v. Davis, 76 Ill App2d 88, 94, 221 NE2d 121 (1966).

██ ██ Since this case must be remanded for a new trial, we further state that we agree with the defendants' contention that the plaintiffs' inquiry concerning the marital status of the female companion of Toepfer was improper. The People v. Duncan, 261 Ill 339, 354, 355, 103 NE 1043 (1914); Schoolfield v. Witkowski, 54 Ill App2d 111, 125, 203 NE2d 460 (1964). We also agree with the defendants that evidence of the injuries to Toepfer at the time of the accident was also relevant and admissible as a possible explanation of his conduct and mannerisms at the time. On retrial, the attorneys and trial judge should be guided by these views.

For the reasons stated, the cause is reversed and remanded for a new trial.

Reversed and remanded for a new trial.

MORAN and ABRAHAMSON, JJ., concur.