Florence Phillips, Plaintiff-Appellant, *v.* Shell Oil Company *et al.*, Defendants-Appellees.

(No. 71-110;

Fifth District—July 20, 1973.

*Rehearing denied August 22, 1973.*

513

J. Emett Cassidy, of Hackensack, New Jersey, and Wagner, Conner, Ferguson, Bertrand & Baker, of Belleville, (Francis D. Conner, of counsel,) for appellant.

Burroughs, Simpson & Wilson, of Edwardsville, for appellee Shell Oil Company.

John T. Roach, of Alton, (Allen D. Churchill, of counsel,) for appellee Herman Wehmeyer.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Madison County, in an action brought by appellant Phillips against appellees Wehmeyer and the Shell Oil Company, charging that their negligence in the design, maintenance and operation of a service station resulted in injury to her.

The action was commenced by the filing of a complaint of March 3, 1965. The case was brought to trial in October of 1970. The jury at the conclusion of the evidence returned a verdict in favor of the plaintiff and against both defendants in an amount of $10,000. The jury, however,

replied in the affirmative to a special interrogatory which asked, "Do you find from the evidence that at and immediately prior to the occurrence in question the plaintiff was guilty of any contributory negligence which was a proximate cause of said occurrence?" The court entered judgment in favor of the defendants notwithstanding the verdict on the basis of the answer to the special interrogatory. From the judgment, the plaintiff has brought this appeal.

The plaintiff, on April 1, 1964, came into the Shell Service Station on U.S. Highway 66 at Hamel. She was there to purchase the goods and services of the station. The station was designed by the defendant company and was operated by defendant Wehmeyer. The plaintiff was accompanied by her sister, her son and a friend of her son. The weather was clear and the sun shone.

The station itself faced south with the office area on the right side of the station and the garage, or bay area, on the left. The plaintiff and her sister entered the office area while the son and friend stayed with the auto to get it serviced.

Upon entering the station, the plaintiff noted a soda machine to her left and she and her sister decided to have a soda. When the plaintiff took out the soda, she was in front of the machine and facing west (towards the bay area). She did not look into the bay area although there was nothing to prevent her from so looking. She was aware that there was a bay area. The plaintiff next stepped to her left around the machine with her back to the front doorway which was in a held-open position. As the plaintiff stepped sideways to allow her sister to open a soda, the plaintiff stepped down a four to six inch step and fell, sustaining a fractured hip. She was facing the back of the station with her left side to the step. She did not look where she stepped. There was no obstruction to prevent her from seeing the step. The plaintiff at the time of the accident was fifty four years old with no defect in her eyesight.

The step, or drop off, extended the entire width of the station and was located at the separation of the office area and the bay area. There was no wall or partition along the step, but there was placed alongside the step the soda machine and various other display counters both in the office side and the bay side so as to form a sort of partition between the two distinct areas of the station. There was left open in the partition a walkway two and one half to three feet wide between the soda machine and the front doorway where the plaintiff fell. The floor of the inside of the station was painted the same gray color throughout. There was no defined doorway between the two areas and there was no guard rail or handrail, nor were there any warning devices or indicators of the

step. The station was constructed according to the plans and specifications furnished by defendant Shell.

Plaintiff incurred $5291.08 of expense in the form of hospital bills, doctor bills and various associated medical expenses in the care and treatment of injury.

After her fall, the plaintiff was taken to Staunton Hospital where she underwent an operation wherein the hip was "pinned". This operation was not successful and she was taken to Lutheran Hospital in St. Louis, Missouri, where she was once again operated upon approximately one week after the first operation. This second operation involved removing the nail and plate that had been placed in the hip in the first operation and in lieu thereof placing a key nail and two Knowles pins. Subsequently there was a third operation performed on the hip. Medical testimony indicated that because of the accident there was muscle weakness in the hip and that the plaintiff would have a permanent limp and that it was likely that she would require future medical treatment.

The plaintiff has in this appeal urged several specific points for reversal and they each shall be considered in the order presented.

The trial court excluded from evidence the testimony of Ronald L. Eilering, a registered and practicing architect in the State of Illinois. In a hearing outside the presence of the jury, the plaintiff elicited testimony of Mr. Eilering's qualification and his opinions concerning the defects of the design of the station including not only the location and identification of the step, but also the location of the "door". The trial court at the conclusion of the hearing stated: "Although I find that he could testify as an expert, I think that it wouldn't help the jury. So we are not going to qualify him as a witness". The plaintiff, as her first point for reversal, contends that the trial court abused its discretion in excluding the offered testimony of a qualified expert witness.

■■ The admission of expert testimony and the qualification of an expert witness is generally left to the discretion of the trial judge. (*Park District of Highland Park v. Becker* (1965), 60 Ill.App.2d 463, 208 N.E. 2d 621; *Evanston Best & Co. v. Goodman* (1938), 369 Ill. 207, 16 N.E.2d 131.) The general rule is that expert testimony is admissible when the subject matter is of such character that only persons of skill and experience in it are capable of forming correct judgments as to any facts connected therewith. (*Schneider v. Kirk* (1967), 83 Ill.App.2d 170, 226 N.E.2d 655; *Nystrom v. Bub* (1962), 36 Ill.App.2d 333, 184 N.E.2d 273.) Expert testimony on matters of common knowledge is inadmissible. (*Hayes v. Place*, 350 Ill.App. 504, 113 N.E.2d 178 and cases cited therein.) While there is a trend to admit expert testimony in matters which are

complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where difficult of comprehension and explanation (*Miller v. Pillsbury,* 33 Ill.2d 514, 211 N.E.2d 733), we cannot say whether the location and identification of a step and the location of a door are hazardous, is sufficiently complicated or difficult of comprehension and explanation, to hold that a trial court who heard the testimony, abused its discretion by denying expert testimony on the subject. We must determine, therefore, whether the physical factors involved in the location of a step are matters of common knowledge.

■■ A case involving the location of steps and the question of whether this is a proper subject for expert testimony is *Blackburn v. Tombling* (1960), 148 Col. 161, 365 P.2d 243. (See also *Chick v. Gilcrist* (1911), 208 Mass. 183, 94 N.E. 276; *Burton v. Horn & Hardart Baking Co.* (1952), 371 Pa. 60, 88 A.2d 873, 63 A.C.2d 731.) In that case an architect testified that the location of certain steps in the defendant's doorway constituted a dangerous condition. The Supreme Court of Colorado, *en banc,* determined that such testimony was error, stating: "There is no need for expert opinion with reference to facts involving commonplace occurrence." We cannot state that the subject matter of the location of the step in the present case "is of such character that only persons of skill or experience in it are capable of forming a correct judgment as to any fact connected therewith". (*Mahlstedt v. Ideal Kighting Co.* (1915), 271 Ill. 154, 110 N.E. 795; 31 Am.Jur.2d Expert & Opinion Evidence § 21.) Because the proffered testimony concerned a matter of common knowledge, it was properly excluded.

■■ The plaintiff next urges that the court below erred in excluding evidence of a prior fall because that fall was notice to the defendants of the existence and nature of a hazardous condition. Although the evidence of other accidents is admissible in an action for negligence where it tends to show the common cause of the accidents to be a dangerous thing or condition of which the defendant had knowledge and that the thing shown to be the common cause contributed to the danger of the accident in the suit and where it was in the same condition as in the other accidents (*Welter v. Bowman Dairy Co.* (1943), 318 Ill.App. 305, 47 N.E.2d 739; *Moore v. B. D. & C. R.R. Co.* (1920), 295 Ill. 63, 128 N.E. 721), the admissibility of such evidence depends on the facts of each case. (*Solomon v. The Fair* (1962), 36 Ill.App.2d 188, 183 N.E.2d 588.) Because of the dearth of information in the record concerning the similarity of conditions at the prior accident and because the evidence, if admitted, would not have countered the jury's conclusion that the plaintiff was contributorily negligent, we need deal no further with this issue.

A judgment will not be reversed unless it appears that the error affected the outcome below (*Baker v. Baker* (1952), 412 Ill. 511, 107 N.E.2d 711), or where it appears that the result would most likely have been the same. (*Jenkins v. Hechtman* (1967), 83 Ill.App.2d 72, 226 N.E.2d 383; *Shafer v. Northside Inn, Inc.* (1963), 44 Ill.App.2d 86, 194 N.E.2d 5.) If indeed there were any error committed on this issue, it would not be reversible error.

The court refused to give plaintiff's Instruction No. 16 which stated:

"Under the laws of the State of Illinois the one who prepares and furnishes plans and specifications for the construction of a commercial building to be used by the general public owes a duty to members of the public he might reasonably anticipate will use the building to exercise reasonable care to design the building so that it will be reasonably safe for use by such members of the public."

The plaintiff asserts the failure to give this instruction was error.

■■ There is no I.P.I. instruction which covers the duty of the supplier of plans and specifications for construction of commercial buildings. Plaintiff contends that since the instruction is a correct and clear statement of the law based on *Laukkanen v. Jewel Tea Co.* (1966), 78 Ill.App.2d 153, 222 N.E.2d 584, she is entitled under *Merchant's National Bank v. E. J. & E. Ry. Co.* (1971), 49 Ill.2d 118, 273 N.E.2d 809, to give the instruction because it correctly states the law. The practice of paraphrasing the language of court's opinions has been condemned by the Supreme Court, as it often leads to serious error (*Bartosh v. Ryan* (1951), 344 Ill. App. 214; *Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill.App.2d 392, 235 N.E.2d 323), although it is not always error to do so. Because of the verdict and finding of the jury, we fail to perceive that the failure of the court to give the requested instruction could have been prejudicial error to the plaintiff if, in fact, it is error. The jury did find against the defendant Shell Oil and must, therefore, have been cognizant of the duties of that defendant as set forth in plaintiff's Instruction #10 and #11 which state:

#10. The owner or occupant of property owes an invitee the duty to exercise ordinary care to keep the property in reasonably safe condition for use by the invitee.

#11. An invitee is a person who is upon the premises for a purpose connected with the occupant's business by the invitation of the occupant. The invitation may be expressed or be implied by the circumstances under which the person enters the premises.

■■ Plaintiff next asserts that the court erred in submitting defendant Shell's special interrogatory to the jury and in entering judgment upon

the special finding. There was no error in the submission of the interrogatory. Ill. Rev. Stat. (1963), ch. 110, § 65, makes the giving of a special interrogatory mandatory when it is requested and is on a material fact. (*Hollis v. Terminal R. Assn. of St. Louis* (1966), 72 Ill.App.2d 13, 218 N.E.2d 231.) A special interrogatory must be given if it is upon an ultimate question of fact and is in proper form. (*Golden v. Big Bear Foods, Inc.* (1968), 102 Ill.App.2d 237, 243 N.E.2d 730; *DeBolt v. Wallace* (1965), 56 Ill.App.2d 380, 206 N.E.2d 469.) Plaintiff cannot but agree that the interrogatory submitted to the jury was on an ultimate question fact, but she does attack it as being slanted in form. However, the form of the interrogatory in the instant case is identical to that in *Moyers v. Chicago & Eastern Illinois R.R. Co.* (1963), 43 Ill.App.2d 316, 193 N.E.2d 604, where the court held that the refusal to submit the interrogatory was reversible error. The trial court was obviously correct in submitting the interrogatory.

▆▆▆ The trial court was also correct in entering judgment upon the special finding. It is well settled that an inconsistent special finding controls a general verdict (*Borries v. Z. Frank, Inc.* (1967), 37 Ill.2d 263, 226 N.E.2d 16, rev'g. 73 Ill.App.2d 128, 219 N.E.2d 737; *Houston v. Leyden Motor Coach Co.* (1968), 102 Ill.App.2d 348, 243 N.E.2d 293), and failure to enter judgment upon the special finding in this situation is reversible error. (*North Shore Sanitary Dist. v. Schulik* (1957), 12 Ill.2d 309, 146 N.E.2d 25.) A trial court may set aside a special finding only when it is contrary to the manifest weight of the evidence. (*Houston v. Leyden Motor Coach Co., supra; Peach v. Peach* (1966), 73 Ill.App.2d 72, 218 N.E.2d 504.) Since there is evidence in the record to support the jury's finding of contributory negligence, the trial court was required to enter judgment on the special finding.

The final contention of the plaintiff is that she is entitled to judgment against the defendant Shell Oil Company in accordance with the manifest weight of the evidence. In view of the above conclusion, we do not accept the plaintiff's contention. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.App.2d 494, 229 N.E.2d 504.) We cannot and do not find that the evidence viewed in its aspect most favorable to defendant Shell Oil so overwhelmingly favors the plaintiff that no contrary verdict upon that evidence could ever stand.

The judgment of the trial court is accordingly affirmed.

CREBS and JONES, JJ., concur.